UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-CV-61206-LENARD/Turnoff

STEPHEN M. GAFFIGAN, an individual,
and TIFFANY (NJ), LLC, a Delaware
limited liability company,

      Plaintiffs,

v.

DOES 1-10 d/b/a
TIFJEWELRYSTORE.COM,
BLOGTOWINTIFFANY.COM,
SHOPTIFFANYNOW.COM,
SHOPTIFFANYTODAY.COM,
TIFFANYJEWELRIESHOP.COM,
TIFFANYJEWELRIESSHOP.COM,
TIFFANYJEWELRYNOW.COM,
TIFFANYJEWELRYSTORE.US,
TIFFANYJEWELRYTODAY.COM,
TIFFANY-SILVER.US, TIFJEWELRY.US,
TIFFANY925SALE.COM,
TIFFANY4SALENOW.COM,

      Defendants.

_____/

**REPORT AND RECOMMENDATION AND**
**ORDER EXTENDING TEMPORARY RESTRAINING ORDER**

    **THIS CAUSE** is before the Court upon Plaintiffs' Motion for Temporary Restraining

Order on an *Ex Parte* basis and Order to Show Cause why a Preliminary Injunction Should

not Issue **[DE 3]**.  The Show Cause hearing was referred to the undersigned by the

Honorable Joan A. Lenard, District Court Judge for the Southern District of Florida **[DE**

**13]**.  This Court held two Show Cause hearings.  One was held on September 29, 2009,

Case No. 09-CV-61206-LENARD/Turnoff

and the other on October 15, 2009.  Having reviewed written and oral arguments, the entire record, the declarations, the applicable law, and being otherwise fully advised in the premises, it is hereby **RESPECTFULLY RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction **[DE 3]** be **GRANTED**, and that Plaintiffs be awarded their attorney's fees and costs in connection with this matter, up to and including the filing and service of this Report and Recommendation.

### Factual Background

This case was brought by Plaintiffs Stephen M. Gaffigan and Tiffany (NJ), LLC ("Tiffany"), against the owners, whose names are currently unknown, of various websites, alleging trademark counterfeiting and infringement, false designation of origin, cyberpiracy, and copyright infringement. **[DE 3]** at pp. 1–2.  In particular, Plaintiffs allege that Defendants are promoting, selling and offering for sale and distribution counterfeit and infringing Tiffany-branded products within this judicial district and throughout the United States through various interactive commercial Internet websites operating under, at least, the following domain names: tifjewelrystore.com, blogtowintiffany.com, shoptiffanynow.com, shoptiffanytoday.com, tiffanyjewelrieshop.com, tiffanyjewelriesshop.com, tiffanyjewelrynow.com, tiffanyjewelrystore.us, tiffanyjewelrytoday.com, tiffany-silver.us, tifjewelry.us, tiffany925sale.com, tiffany4salenow.com, tiffany4saletoday.com, tiffany-outlet.us, tiffany4sales.com, tiffany-jewelry-us.com, tiffany4saleshop.com, tiffany4salestore.com, tiffanyjewelries.us, tiffany-outlet-store.com, Tiffany-jewelry-925.com, Tiffany-jewelry-store.us,

Case No. 09-CV-61206-LENARD/Turnoff

tiffanyjewelryshop.co.uk, tiffanyjewelrystore.co.uk, tiffany-au.com, and tiffanyjewelry-us.com (hereinafter, the "Subject Domain Names").[1]  Plaintiffs also allege that all of the websites operating under the Subject Domain Names are linked to the tifjewelrystore.com website.  Declaration of Steven Costello ("Costello Decl."), **[DE 3-2]** at p. 14; Declaration of Robert Holmes ("Holmes Decl."), **[DE 3-5]** at p. 4.  Specifically, once an item on any of the websites is selected, the website automatically forwards to the tifjewelrystore.com website.  Id.  Moreover, Plaintiffs allege that Defendants are using counterfeits of Tiffany's world-famous trademarks and copyrighted works in connection with the marketing, advertisement, and sale of counterfeit bracelets, necklaces, pendants, earrings, rings, cufflinks, money clips and key rings. **[DE 3]** at p. 2.  Plaintiffs also allege that Defendants have used Tiffany's trademarks and copyrighted works on some products designed to look like Tiffany genuine products and on some product styles that do not look like Tiffany genuine products. Id. Plaintiffs further allege that Defendants are falsely representing to the public and the trade that Defendants' goods are authentic products authorized for sale by Tiffany, when they are, in reality, counterfeit items. Id.  Plaintiffs allege that Defendants'

---

[1]The domain names tifjewelrystore.com, blogtowintiffany.com, shoptiffanynow.com, shoptiffanytoday.com, tiffanyjewelrieshop.com, tiffanyjewelriesshop.com, tiffanyjewelrynow.com, tiffanyjewelrystore.us, tiffanyjewelrytoday.com, tiffany-silver.us, tifjewelry.us, tiffany925sale.com, and tiffany4salenow.com were included in the Complaint. Tiffany4saletoday.com, tiffany-outlet.us, tiffany4sales.com, tiffany-jewelry-us.com, tiffany4saleshop.com, tiffany4salestore.com, tiffanyjewelries.us, tiffany-outlet-store.com, tiffany-jewelry-925.com, and Tiffany-jewelry-store.us are additional domain names that were also registered by Defendants, of which Plaintiffs became aware after the filing of the Complaint.**[DE 9-1]**; **[DE 11-1]**. Tiffanyjewelryshop.co.uk, tiffanyjewelrystore.co.uk, tiffany-au.com, and tiffanyjewelry-us.com are additional domain names that were registered by Defendants, of which Plaintiffs learned through discovery propounded on Go Daddy Software, Inc. **[DE 29]**.

Case No. 09-CV-61206-LENARD/Turnoff

activities constitute willful and intentional infringement and counterfeiting of Tiffany trademarks and copyrighted works in total disregard of Tiffany's rights, and have taken place in spite of Defendants' knowledge that their use of Tiffany's trademarks and copyrighted works was, and is, in direct contravention of Tiffany's rights. Id.

Additionally, Plaintiffs allege that Defendants have fraudulently registered many of the domain names at issue in this matter using the name of Tiffany and its counsel, Mr. Gaffigan. Id. Plaintiffs argue that, in so doing, Defendants have created a false association between their counterfeit and infringing goods and websites and Tiffany and Gaffigan, and that this false association is causing, and will continue to cause, irreparable harm to Tiffany and Gaffigan. Id.

Moreover, Plaintiffs allege that Defendants' registration of multiple domain names, which incorporate a Tiffany-registered trademark, constitutes cyberpiracy. Plaintiffs allege that Defendants' cyberpiracy has caused, and will continue to cause, irreparable injury to Tiffany and Gaffigan. Id.  Further, Plaintiffs allege that Defendants have deprived Tiffany of its right to determine the manner in which Tiffany's trademarks and copyrighted works are presented to the public through merchandising, have defrauded the public into thinking Defendants' goods are valuable, have authorized goods of Tiffany, have deceived the public as to Plaintiffs' sponsorship and/or association of Defendants' goods and the websites through which such goods are marketed and sold, and have wrongfully traded and capitalized on Tiffany's reputation and goodwill and the commercial value of Tiffany's trademarks and copyrighted works. **[DE 3]** at pp. 2-3.

Case No. 09-CV-61206-LENARD/Turnoff

Plaintiffs have filed Declarations in support of their request for a preliminary injunction.  Plaintiffs have filed the Declaration of Stephen M. Gaffigan **[DE 3-1]**, along with two supplements **[DE 9-1]** and **[DE 11-1]**, the Declaration of Steven Costello **[DE 3-2]**, and the Declaration of Robert Holmes **[DE 3-5]**.

As part of Plaintiffs' investigation, they hired Robert Holmes, an investigator who accessed the website operating under the domain name tifjewelrystore.com and placed an order for the purchase of a "Heart Tag Key Ring" and an "1837 Money Clip."  Holmes Decl., **[DE 3-5]** at pp. 2, 4-6.  He received email confirmations of both purchases. Id. at pp. 2-3.  The purchases were shipped to him in Ft. Lauderdale, Florida. Id. at p. 3.  After receipt of his purchases, he turned them over to Tiffany. Id. at pp. 7-8.  Steven Costello, an expert in Tiffany products, compared the products with original Tiffany products and determined that the products from tifjewelrystore.com were non-genuine counterfeits of Tiffany products. Costello Decl. **[DE 3-2]** at pp. 6-7.  Mr. Costello also examined the Tiffany-branded products offered for sale by Defendants via the Internet websites listed in the Complaint and determined that some of the Tiffany-branded products are exact duplicates of the works protected by Tiffany's copyrights. Id.

**Procedural Background**

On August 6, 2009, Plaintiffs filed a Motion for Temporary Restraining Order on an *Ex Parte* basis and Order to Show Cause Why a Preliminary Injunction Should not Issue. **[DE 3]**.  On September 11, 2009, Judge Lenard granted Plaintiffs' Motion for Temporary Restraining Order on an *Ex Parte* basis and ordered that a show cause hearing be held

Case No. 09-CV-61206-LENARD/Turnoff

before the undersigned on September 29, 2009. **[DE 13]**.  Judge Lenard gave Plaintiffs

until September 22, 2009, to effect service of the Summons, Complaint, Motion for

Temporary Restraining Order, and Order Granting *Ex Parte* Relief on all Defendants.  **[DE

13]** and **[DE 15].**  Plaintiffs initially proposed that service be made by emailing the Order

to the email address provided by Defendants to their Registrars.  However, before entering

her Order, Judge Lenard crossed out this proposed language.  **[DE 13]**.  Accordingly,

Judge Lenard ordered Plaintiffs, pursuant to Rule 4(f)(3), of the Federal Rules of Civil

Procedure, to serve a copy of the Summons, Complaint, Motion for Temporary Restraining

Order and her Order on all Defendants on or before September 22, 2009. **[DE 13]** and **[DE

15]**.

On September 28, 2009, Plaintiffs filed Proof of Service indicating that true and

correct copies of the Complaint, Motion for Temporary Restraining Order, and Order

Granting *Ex Parte* Relief were served by an investigator at IPCybercrime.com, LLC, on the

domain names listed in the Complaint using three email addresses.  **[DE 17]**.

Plaintiffs appeared at the September 29, 2009, Show Cause hearing, but

Defendants did not.  At the hearing, Plaintiffs advised the Court that they had to use email

addresses to effectuate service on Defendants because that was the only accurate contact

information they had.  Plaintiffs argued that, if they were not permitted to serve Defendants

by email, then they could not obtain relief in this matter.  Plaintiffs further advised the Court

that the only physical addresses they had for Defendants were three addresses that

Defendants listed in conjunction with their websites.  However, Plaintiffs had not attempted

Case No. 09-CV-61206-LENARD/Turnoff

service at those addresses, because they had determined, through investigation, that the addresses were phony.

At the September 29, 2009, Show Cause hearing, the undersigned found that, pursuant to Judge Lenard's Order **[DE 13]**, and the spirit of the Federal Rules of Civil Procedure, Plaintiffs had to take further steps to effectuate service on Defendants.  Thus, the undersigned ordered Plaintiffs to make every attempt, pursuant to Federal Rule of Civil Procedure 4, to serve Defendants with copies of the Summons, Complaint **[DE 1]**, Motion for Temporary Restraining Order **[DE 3]**, any Supplements thereto **[DE 9]** and **[DE 11]**, Judge Lenard's Order **[DE 13]**, the Notice of Filing Bond **[DE 14]**, the Notice of Filing Registrar Certificate **[DE 16]**, and the Order Continuing Show Cause hearing **[DE 20]**, at each address they had for Defendants, on or before Tuesday, October 13, 2009.  In addition to service at the physical addresses, the undersigned ordered Plaintiffs to serve the documents via email on every email address they had for the Defendants and/or for the domain names that are the subject of the Temporary Restraining Order.  Further, the undersigned rescheduled the Show Cause hearing to October 15, 2009, and ordered that any response or opposition to the Order to Show Cause be filed with the Court and served on Plaintiffs' counsel prior to the October 15, 2009, hearing.  Additionally, it was ordered that, for good cause shown, the Temporary Restraining Order, entered by Judge Lenard on September 11, 2009 **[DE 13]**, would remain in effect until the October 15, 2009, Show Cause hearing.

Prior to the October 15, 2009, Show Cause hearing, Plaintiffs attempted service at

Case No. 09-CV-61206-LENARD/Turnoff

the physical addresses listed by Defendants in conjunction with the registration of the Subject Domain Names.  In particular, they attempted service at two addresses in Arizona and one in New York City, and they discovered that the Australian address did not exist. Plaintiffs were unable to effectuate service on Defendants at any of these addresses. **[DE 21]**, **[DE 22]**, **[DE 25]**, and **[DE 26]**.  Plaintiffs also attempted service via email on the email addresses that Plaintiffs had for Defendants.   Specifically, Plaintiffs sent the relevant documents to ten email addresses.   Six of the emails bounced back and four were presumed to have been delivered. **[DE 23]**, **[DE 24]**, **[DE 27]**.

Plaintiffs appeared at the October 15, 2009, Show Cause hearing, but Defendants did not.  Defendants also failed to file a response or opposition to the Order to Show Cause.

Plaintiffs seek the entry of an order: 1) issuing a preliminary injunction requiring Defendants to immediately cease their use of the Tiffany Marks, or similar marks, on or in connection with the Internet websites owned and operated, or controlled by Defendants; (2) prohibiting transfer of the Subject Domain Names during the pendency of this litigation; (3) requiring the domain name registrars for the Subject Domain Names to deposit domain name certificates with the Court; (4) ordering that the respective Registrars and/or Registries disable the Subject Domain Names. **[DE 3]**.

### Analysis

A preliminary injunction is appropriate where the movant demonstrates that: (1) there is a substantial likelihood of success on the merits of the underlying case; (2) the

preliminary injunction is necessary in order to prevent irreparable harm or injury; (3) the threatened injury outweighs the harm that the preliminary injunction would cause to the non-movant; and (4) the preliminary injunction would not be adverse to the public interest. Parker v. State Bd. of Pardons and Parole, 275 F. 3d 1032, 1034-1035 (11th Cir. 2001); Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F. 3d 982, 985 (11th Cir. 1995). Additionally, the Court may issue a preliminary injunction only on notice to the adverse party.  Fed. R. Civ. P. 65 (a).

### A.  Preliminary Injunction

Plaintiffs argue that they meet the requisite elements for issuance of a preliminary injunction.  First, they argue that they have a substantial likelihood of success on each of their four claims, federal trademark infringement and counterfeiting, false designation of origin, cyberpiracy, and copyright infringement. **[DE 3]** at pp. 8-19.  Second, Plaintiffs argue that they will suffer irreparable injury if a preliminary injunction is not issued. Id. at p. 19.  Third, they argue that the injury to Plaintiffs outweighs the threatened harm that an injunction would cause Defendants. Id. at pp. 19-20.  Finally, Plaintiffs argue that the injunction would not be a disservice to the public interest. Id. at p. 20.

### 1.  Substantial Likelihood of Success on the Merits

Plaintiffs state that, in order to prevail on Tiffany's federal trademark infringement and counterfeiting claim, Tiffany must demonstrate (1) ownership of the marks at issue; (2) Defendants' use of the marks is without authorization from Tiffany; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or

Case No. 09-CV-61206-LENARD/Turnoff

sponsorship of Defendants' Goods.  In support, Plaintiffs represent that Tiffany is the owner of the Tiffany marks, which are registered, valid, and thus, protectable marks; that Defendants do not have, nor have they ever had, the right or authority to use the Tiffany marks on Defendants' goods; and that Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' goods. Plaintiffs represent that all but one of their marks have become "incontestable," meaning that there is conclusive evidence of their exclusive right to use the registered mark, and that the overwhelming majority of the factors considered in this Circuit's likelihood-of-confusion test weigh heavily in their favor.  Plaintiffs argue that they meet the likelihood-of-confusion test because their marks are strong and have acquired secondary meaning; that Defendants are using the exact marks on similar products; that Defendants' sales methods are identical to those of Tiffany; that Defendants adopted the marks with the intention of reaping the benefits of Tiffany's world-renown reputation for making high quality goods; and that it is reasonable to infer, not just a likelihood of confusion, but actual confusion to the buyer and other consumers viewing the product.

The undersigned finds that Plaintiffs' evidence establishes that Tiffany is the owner of the marks at issue, that Tiffany has not authorized Defendants to use the marks, and that Defendants' use of the marks is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of Defendants' goods.  Accordingly, the undersigned finds that there is a substantial likelihood of success on Tiffany's federal trademark infringement and counterfeiting claim.

Case No. 09-CV-61206-LENARD/Turnoff

Plaintiffs argue that the test for liability on a false designation of origin claim is also whether the public is likely to be deceived or confused by the similarity of the marks at issue.  Plaintiffs argue that, because they have established the merits of their trademark infringement and counterfeiting claims, a likelihood of success is also shown as to Tiffany's false designation of origin claim.  Further, Plaintiffs argue that they have likewise demonstrated that Defendants have made false statements that many of the domain names at issue are registered, owned and/or administered by Tiffany and/or Gaffigan.

Based on the evidence submitted by Plaintiffs, this Court finds that the public is likely to be deceived and/or confused by the similarity of Tiffany's marks and those used by Defendants.  Additionally, the evidence supports the fact that Defendants have made false statements linking the registration, ownership, and administration of the domain names to Plaintiffs.  Accordingly, the Court finds that Plaintiffs have a substantial likelihood of success on their false designation of origin claim.

Plaintiffs argue that, in order to prevail on Tiffany's cyberpiracy claim, they must prove that: (1) their mark is distinctive or famous and entitled to protection; (2) Defendants' domain name is identical or confusingly similar to Tiffany's mark; and (3) Defendants registered or used the domain names with a bad faith intent to profit.

In support of the argument that Tiffany's marks are distinctive and famous, Tiffany represents that it has expended substantial time, labor, skill, and expense in advertising and promoting the Tiffany marks throughout the United States, overseas, and via the Internet; that some of Tiffany's marks have been registered as early as the 1890's and

Case No. 09-CV-61206-LENARD/Turnoff

1920's and have been in continuous use since then; that Tiffany's genuine goods are among the best-selling, high quality, luxury items; and that the Tiffany marks enjoy widespread recognition and are prominent in the minds of the consuming public. Regarding the similarity of Tiffany's and Defendants' marks, Plaintiffs argue that all but two of the Subject Domain Names incorporate at least one of the Tiffany marks in its entirety, surrounded by descriptive or generic terms, rendering the marks nearly identical to Tiffany's trademarks, and that the other domain names incorporate portions of the Tiffany marks, together with the goods associated with Tiffany's marks, such as jewelry. Moreover, Plaintiffs argue that, in order to determine whether a person has registered or used a domain name in bad faith, the Court considers nine non-exhaustive factors set forth in the Anticybersquatting Consumer Protection Act ("ACPA"). Plaintiffs argue that an examination of the bad faith factors compels the conclusion that Defendants registered and used the domain names in bad faith. In support, Plaintiffs state that Defendants have no rights in the Tiffany marks; that Defendants have never used those marks in connection with a *bona fide*, non-infringing, offering of goods or services; that Tiffany has used the marks in commerce since before the domain names existed; that Defendants have intentionally incorporated the Tiffany mark into the Subject Domain Names to divert consumers looking for Tiffany's website to their own websites for commercial gain; that consumers are likely to mistakenly believe the websites are endorsed by and/or affiliated with Tiffany; that Defendants have deliberately identified Plaintiffs' counsel and/or Tiffany as the name registrants and/or administrative contacts for some of the Subject Domain

Case No. 09-CV-61206-LENARD/Turnoff

Names; and that Defendants have listed Private Protect Co. Ltd. Service for the remaining Subject Domain Names.

The Court finds that the Tiffany marks are distinctive, famous, and entitled to protection, that the domain names used by Defendants are in some cases identical, and in some cases confusingly similar, to Tiffany's marks, and that there is strong evidence to support the conclusion that Defendants registered or used the domain names with a bad faith intent to profit. Accordingly, the Court finds that there is a substantial likelihood that Plaintiffs will prevail on their cyberpiracy claim.

Plaintiffs argue that, in order to prevail on Tiffany's copyright infringement claim, Tiffany must prove that it owns the copyrighted works at issue and that Defendants' copy constitutes elements of the work that are original. Plaintiffs argue that Tiffany satisfies these requirements. In support, Plaintiffs submitted copies of Tiffany's copyright registrations and stated that those registrations serve as *prima facie* evidence of validity and ownership. Regarding whether Defendants' copy constitutes elements of the work that are original, Plaintiffs argue that, although the Court need only find that Defendants' products bear a substantial similarity to the copyrighted works, Defendants' designs, in this case, bear an identical likeness to the designs reflected in the Tiffany copyrights. Moreover, Plaintiffs argue there is an overwhelming inference that Defendants had access to Tiffany's copyrighted designs because of the long-standing and wide dissemination of those copyrighted designs and because Defendants' copies are virtually identical to Tiffany's copyrighted work.

Case No. 09-CV-61206-LENARD/Turnoff

Here, the evidence supports a finding that Tiffany owns the copyrighted works at issue. Furthermore, the evidence supports a finding that, because of the widespread dissemination of the Tiffany copyrighted works and the substantial similarity between the Tiffany copyrighted works and Defendants' works, Defendants' copies constitute elements of the work that are original. Thus, this Court finds that there is a substantial likelihood that Plaintiffs will prevail on their copyright infringement claim.

## 2. Irreparable Harm of Injury to the Plaintiffs

Plaintiffs argue that, in a case such as this one, where a plaintiff has shown a likelihood of confusion and where a plaintiff has demonstrated that it will lose control of its reputation as a result of a defendant's activities, a finding of irreparable injury is virtually always made. Plaintiffs further argue that the Eleventh Circuit has indicated that a sufficiently strong showing of likelihood of confusion may, by itself, constitute a showing of a substantial threat of irreparable harm. Moreover, Plaintiffs argue that they will suffer irreparable injury because Defendants' goods are of a substantially different quality than the Tiffany goods. Finally, Plaintiffs argue that they will continue to suffer irreparable injury to their reputations and goodwill for as long as Defendants are allowed to continue their counterfeiting and false association activities, and that monetary damages alone will not cure the injury to their reputations.

The undersigned has already found that the similarity of Tiffany's and Defendants' marks and works create a substantial likelihood of confusion in this case. In addition, the undersigned finds that Plaintiffs have submitted evidence to support a finding that

Case No. 09-CV-61206-LENARD/Turnoff

Defendants' goods are of a different quality than Plaintiffs' goods. Accordingly, an award of monetary damages alone will not cure the irreparable injury that Plaintiffs will continue to suffer to their reputations and goodwill if Defendants are allowed to continue operation of their websites.

### 3. Balancing Injury to Plaintiffs and Threatened Harm of Injunction to Defendants

Plaintiffs represent that Tiffany has expended substantial time, money, and other resources to develop the quality, reputation, and goodwill associated with the Tiffany marks and the genuine goods bearing Tiffany marks. Moreover, Plaintiffs represent that Mr. Gaffigan has also expended substantial time and other resources building his reputation as an anti-counterfeiting attorney on behalf of luxury goods companies. Plaintiffs argue that they have already suffered unquantifiable damage to their reputations, and, if Defendants are permitted to continue, Plaintiffs will continue to suffer substantial losses and damage to their reputations. Plaintiffs argue that, to the contrary, Defendants will suffer no legitimate hardship if a preliminary injunction is issued because Defendants have no legal or equitable right to engage in their present counterfeiting and false association activities. Accordingly, Plaintiffs argue that the balance of hardship tips sharply in their favor.

Based on the evidence presented by Plaintiffs, including evidence regarding Tiffany's ownership of the marks and copyrights at issue, evidence supporting the fact that Plaintiffs have not authorized Defendants to use those marks and copyrights, and evidence regarding the difference in quality between Tiffany's and Defendants' products,

Case No. 09-CV-61206-LENARD/Turnoff

the undersigned finds that the injury to Plaintiffs' reputations and goodwill outweighs the potential harm a preliminary injunction would cause Defendants.

### 4. Public Interest

Plaintiffs argue that the issuance of a preliminary injunction is in the best interest of the general public because Defendants are engaging in criminal activities and are directly defrauding the consuming public by passing off their goods as genuine Tiffany goods and falsely identifying Plaintiffs as the origin of such goods. Plaintiffs argue that the public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products.

The undersigned agrees that the public has an interest in preventing the activities alleged in Plaintiffs' Complaint, and thus, finds that a preliminary injunction would not be adverse to the public interest.

### B. Notice

Pursuant to this Court's Order granting Plaintiffs leave to seek expedited discovery **[DE 6]**, Plaintiffs were able to contact the registries for the Subject Domain Names and obtain contact information for Defendants. Specifically, Plaintiffs were able to obtain information from Go Daddy Software, Inc. ("Go Daddy"), regarding the contact information that Defendants provided in connection with the registration of many of the Subject Domain Names. Through the expedited discovery allowed by the Court and Plaintiffs' own investigation, Plaintiffs uncovered four physical addresses, a telephone number, and several email addresses for Defendants. Using this information, Plaintiffs exhausted all

Case No. 09-CV-61206-LENARD/Turnoff

attempts to contact and provide notice of the Show Cause hearings to Defendants. They have attempted service at every physical address without success. They have attempted to contact Defendants by telephone without success. They have also sent emails to Defendants at various email addresses, only to have many of those emails returned as undeliverable.

The undersigned finds that Plaintiffs have diligently pursued all means of providing notice of the Show Cause hearings to Defendants and have provided sufficient notice to Defendants through the emails that did not bounce back. The undersigned finds that the emails that did not bounce back were presumptively sent to valid email addresses that reached Defendants. Popular Enterprises, LLC v. Webcom Media Group, Inc., 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (finding that an email sent to an email address supplied by defendant to its domain name registrar did not bounce back and presumably reached defendant). Further, although the issue of service is not before the undersigned, the undersigned finds the cases that address service of process by email to be persuasive regarding whether the emails in this case provided Defendants with notice of the Show Cause hearings. Under certain circumstances, courts have allowed service by email and have found that it was the most likely method to reach defendants. Rio Properties, Inc. v. Rio International Interlink, 284 F. 3d 1007, 1018 (9th Cir. 2002) ("[W]hen faced with an international e-business scofflaw, playing hide-and-seek with the federal court, e-mail may be the only means of effecting service of process"); Popular Enterprises, LLC, 225 F.R.D. at 563 (finding that service of process by email was reasonably calculated to apprize

Case No. 09-CV-61206-LENARD/Turnoff

defendant of the action and give it an opportunity to respond).  Additionally, in this case, email was the method of communication used by Defendants in confirming orders placed on its websites, and thus, email should be calculated to provide Defendants with notice. International Telemedia Associates, Inc. v. Arjuna Diaz, 245 B.R. 713, 721 (N.D. Ga. 2000) ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be included among them").

In addition, the undersigned finds that Defendants' actions subsequent to the filing of this action support a finding that Defendants had actual notice of this action and the Show Cause hearings.  For example, after Plaintiffs filed a proposed order with the Court containing the email addresses that Plaintiffs had for Defendants, Defendants disabled those email addresses.  Moreover, shortly after the Temporary Restraining Order was entered, Defendants changed their contact information with Go Daddy to a non-existent Australian address.  Defendants' actions demonstrate that Defendants are aware of this action and are intentionally concealing their location.

**Conclusion**

This Court finds that Plaintiffs' evidence overwhelmingly supports the issuance of a preliminary injunction, and thus, Plaintiffs have met their burden of proof.  The Court finds that Plaintiffs have a substantial likelihood of success on the merits of each of the counts of their Complaint, that the preliminary injunction is necessary in order to prevent irreparable harm or injury to Plaintiffs, that the threatened injury outweighs the harm that

Case No. 09-CV-61206-LENARD/Turnoff

the preliminary injunction would cause Defendants, and that the preliminary injunction would not be adverse to the public interest.  Further, the Court finds that Defendants have been provided with sufficient notice of the Show Cause hearings.  Additionally, the Court notes that Defendants have failed to appear at the Show Cause hearings or in any way respond or object to the requested relief.

Accordingly, consistent with the above and foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiffs' Motion for a Preliminary Injunction **[DE 3]** be **GRANTED**, and that Plaintiffs be awarded their attorney's fees and costs in connection with this matter up to and including the filing and service of this Report and Recommendation.

In particular, the undersigned **RESPECTFULLY RECOMMENDS** that Defendants, their respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendants having notice of the Order be (1) preliminarily enjoined from manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Tiffany trademarks identified in the Complaint, or any confusingly similar trademark, and from copying or reproducing any works protected by the Tiffany copyrights identified in the Complaint; from secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (I) any products, not manufactured or distributed by Tiffany, bearing the Tiffany trademarks, or any confusingly similar trademarks, and from copying or reproducing any works protected by the Tiffany copyrights; or (ii) any evidence relating to the manufacture, importation,

Case No. 09-CV-61206-LENARD/Turnoff

sale, offer for sale, distribution, or transfer of any products bearing the Tiffany trademarks, or any confusingly similar trademarks, and any works protected by the Tiffany copyrights; (2) immediately discontinue the use of the Tiffany trademarks or any confusingly similar trademarks, and any works protected by the Tiffany copyrights, on or in connection with the Internet websites owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names; and (3) immediately discontinue the use of the Tiffany trademarks or any confusingly similar trademarks, and any works protected by the Tiffany copyrights within domain names, domain name extensions, metatags or other markers within website source code, from use on any web page, any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches on search engines to websites registered by, owned, or operated by Defendants, including the Internet websites operating under the Subject Domain Names.

The undersigned **FURTHER RESPECTFULLY RECOMMENDS** the entry of an Order that: (1) the Registrars and Registries for the Subject Domain Names immediately disable the Subject Domain Names so as to render them inaccessible to on-line customer traffic; (2) Defendants not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court; (3) the domain name Registrars for each of the Subject Domain Names transfer to Plaintiffs' counsel, for deposit with this Court, domain name certificates for each of the Subject Domain Names; (4) the top level domain (TLD) Registries for the Subject Domain Names, within seven (7) days of receipt

Case No. 09-CV-61206-LENARD/Turnoff

of this Injunction, deposit control of the domain names into the registry of the court, if they have not already done so.  While the domain names are in the registry of the court, the TLD Registries will place them on "hold" status and remove the domains from the TLD zone files maintained by the Registries which link the domain names to the IP addresses where their sites are hosted; (5) Defendants preserve copies of all their computer files relating to the use of any of the Subject Domain Names and take all steps to retrieve computer files relating to the use of any of the Subject Domain Names that may have been deleted before the entry of the Preliminary Injunction; (6) that the Preliminary Injunction shall remain in effect until the permanent injunction hearing or until such further dates as set by the Court or stipulated to by the parties; and (7) that Plaintiffs' twenty-five thousand dollar bond remain in effect.

Additionally, the undersigned **RESPECTFULLY RECOMMENDS** that Plaintiffs be awarded their attorney's fees and costs in connection with this matter, up to and including the filing and service of this Report and Recommendation.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections to this Recommendation with the Honorable Joan A. Lenard, United States District Judge, within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

Case No. 09-CV-61206-LENARD/Turnoff

## **ORDER**

It is hereby **ORDERED AND ADJUDGED** that Plaintiffs are to serve Defendants with a copy of this Report and Recommendation and Order Extending Temporary Restraining Order via email on every email address that they have available for Defendants and/or the domain names that are the subject of the Temporary Restraining Order within forty-eight (48) hours of the filing of this Report and Recommendation. Moreover, for good cause shown, the Temporary Restraining Order, entered by Judge Lenard on September 11, 2009 **[DE 13]**, remains in effect until Judge Lenard rules on the instant Report and Recommendation. Additionally, the Temporary Restraining Order is extended to include the additional domain names tiffanyjewelryshop.co.uk, tiffany jewelrystore.co.uk, tiffany-au.com, and tiffanyjewelry-us.com.

**DONE AND ORDERED** in Chambers, at Miami, Florida, this 7th day of December 2009.

_____

**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc: Hon. Joan A. Lenard
    Counsel of Record